### FOSTER et al. v. WERTHEIMER et al.

(Circuit Court, S. D. New York. April 9, 1896.)

1. PATENTS—PATENTABLE DIFFERENCE—GLOVE FASTENERS.

An improvement in a glove-fastening patent, consisting of a rearward extension and elevation of the head and neck of the former device, by means of which the tightening of the glove is made easier, the fitting more perfect, and the fastening more secure, is a patentable difference.

2. SAME—GLOVE FASTENERS.

The Foster patent, No. 297,980, for an improvement in glove fasteners, construed, and *held* valid as to the exact combination shown, and also *held* infringed.

This was a suit by Foster, Paul & Co. against Wertheimer & Co. for infringement of a patent for a glove-fastening device.

Livingston Gifford, for plaintiffs.
Edwin H. Brown, for defendants.

WHEELER, District Judge. This suit is brought for infringement of patent 297,980, dated May 6, 1884, and granted to William F. Foster, for a glove fastening, consisting of a lacing cord drawn into smooth-headed, eccentric hooks above the glove material, connected by their necks and by flanges to plates below. The defenses are want of novelty, in view of many prior patents, and noninfringement. The patentee says in his specification:

"My present invention relates to a modification of the glove fastening shown in letters patent No. 277,559, granted to me May 15, 1883, whereby the neck or stem of the lace-securing device is arranged eccentrically, and the relationship of the other parts is such that the cord, when laced, is firmly held from unlacing. This plate, which is lettered e, is preferably of such size and shape, and the perforations or recesses are so located in it, that, when in position, it underlies all of that portion of the material which is below the head, a, though I do not limit myself to the precise form of plate shown. The relationship between the plate, e, and the head, a, should preferably be such that the passage between the

head, a, and the glove material is somewhat less in width than the diameter of the lacing cord used, so that, in lacing, both the glove material and the cord itself will be somewhat compressed, to provide for the passage of the cord; and it is preferable to have the passage between the forward edge of the head and the glove material of less width than the passage towards the rear edge of the head, so that when once laced the tendency of the cord will be to remain towards the rear edge of the head, where the passage is widest, rather than to work its way out towards the front edge, and thereby become unlaced. It will be noticed that, in entering or passing out of the hook, the lacing cord is bounded on one side by the head of the hook, and on the opposite side by the compressible glove material, which is so positively held up from below by the plate, e, that the lacing cannot pass either into or out of the hook without pressing directly upon, and somewhat compressing, the glove material against plate, e; and I have also found it desirable to make the lacing cord of a compressible material, so that it, as well as the glove material, will be compressed in its passage under the head of the hook in lacing."

The claim is for:

"In combination, the lacing cord, the glove, the disk-like head, a, arranged on one surface thereof, and the plate, e, arranged on the other surface, in relation substantially as described, the eccentric neck provided with the flange, c, and means of attachment, whereby, by the elasticity of the glove, the entrance to the hook is substantially closed to prevent the escape of the cord."

The nearest patent to this, of those relied upon to defeat it, is that of this inventor, referred to in this specification, as one of which this is a modification. In that the lacing cord there marked "f" was drawn under a circular head, a, above the material, b, connected by a neck, g, to a plate, e, below. In that specification the patentee said:

"The object of my invention is to provide a lacing device, and attach it to the glove and combine it with a lacing in such manner that the device will not be likely to catch in ordinary articles of clothing, or present any rough surfaces, to which the lacing may be readily applied, and which will be adapted to bind the lacing, and prevent its becoming disengaged from the device, or slipping thereon, in ordinary use. For the purpose of thus binding the lacing, I propose by my device to utilize the elasticity of the glove material, and the friction of its upper surface, by causing the lacing to rest between the head of the lacing device and the material of the glove, which material is so confined under the head that, in order to find entrance into the laced position, the lacing cord necessarily compresses the glove material. In attaching the lacing devices shown to the material, the position in which the plate, e, is secured on the neck, g, depends upon the thickness of the glove material, b, or upon the combined thickness of the glove material, b, and the tape, c, if the latter is used, and also upon the size of the lacing, f, employed. The distance between the head, a, and the plate, e, should, however, be sufficient, so that, when the glove material is compressed by the lacing, * * * there should be sufficient distance between the head, a, and the plate, e, to accommodate the lacing, and the thickness of the compressed glove material and the tape below the lacing. At the same time the distance between the plate, e, and the head, a, should not be greater than that required to accommodate the lacing, and the compressed glove material and the tape below it, in the manner shown. With an ordinary kid glove, I have found that the distance between the plate, e, and the head, a, should be preferably about the thickness of the glove material, when uncompressed, and the tape, so that the under side of the head rests lightly upon the upper surface of the glove material, and the upper side of the plate rests lightly upon the under side of the tape when the lacing is not applied. As the lacing is passed under the head of each device, it compresses the glove material beneath it, and as it proceeds further under the head of the device the pressure of the plate, e, on the under side of the material, and the elasticity of the material, will cause it to rise up behind the lacing, * * * so that there is no tendency for the lacing to become disengaged from the devices unintentionally. I have shown my invention applied

to a lacing device having a concentric stem, but it may be used to advantage, also, with the stem eccentric, as in a lacing hook."

And one of the claims is for:

"(3) In combination, the head, a, having the tubular stem, g, the glove material, b, the lacing, f, and the plate, e, substantially as and for the purpose set forth."

Obviously, the difference between the fastenings of these patents consists in the rearward extension and elevation in the latter of the head and neck of the former, making more room there for the cord. The size of these parts is so small that these differences in extent seem very little, but, notwithstanding this, the change in the mode and effect of the operation of the parts is quite considerable. The freedom of movement of the cord provided for, by the enlargement of the place for it in the fastenings, must make the tightening of the glove easier, and the fitting of it more perfect, and the fastening more secure. This seems to be a patentable difference. Many and various prior devices are shown and known, some having hooks of enlarged interior, into which cords and cables are drawn, and others some other of these parts, but none of all of them combined and operating together in this way. As this patent is for this difference as an improvement merely upon the former devices, nothing can be an infringement but what has this specific thing. Railway Co. v. Sayles, 97 U. S. 554. The defendants' fastenings seem to contain the features of this improvement, in the same relation to each other, in somewhat different forms, except that the front of the head and the glove material are brought close together by raising the plate, or portions of it, below, instead of by inclining the head above. In operation and effect, the parts are the same, and so the defendants infringe. Decree for plaintiffs.